# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jeffrey J. Corra,**
**Petitioner Below, Petitioner**

**vs.)  No. 17-0732** (Kanawha County 16-AA-105)

**Pat Reed, Commissioner of**
**The West Virginia Division of**
**Motor Vehicles,**
**Respondent Below, Respondent**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jeffrey J. Corra, by counsel Todd W. Reed, appeals the Circuit Court of Kanawha County's July 20, 2017, order affirming the decision of the Office of Administrative Hearings' to uphold the suspension of his driver's license. Respondent Pat Reed, Commissioner of the West Virginia Division of Motor Vehicles, by counsel Janet E. James, filed a response in support of the circuit court's affirmation. On appeal, petitioner argues that the circuit court erred in upholding the final order of the Office of Administrative Hearings ("OAH") revoking his driver's license when that order was contrary to video evidence that demonstrated petitioner was not intoxicated.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2012, petitioner was stopped by Vienna Police Sergeant K.L. Parrish and asked to perform field sobriety tests by Vienna Police Sergeant B.K. Ingraham. Ultimately, petitioner was arrested and charged with driving under the influence ("DUI"). Petitioner was granted a stay over the suspension of his driver's license pending the outcome of his criminal trial.[1]

Petitioner's administrative hearings regarding the suspension of his driver's license occurred in July of 2013 and February of 2014. During these hearings, respondent called Sergeant Parrish to testify regarding the traffic stop. Sergeant Parrish testified that he noticed petitioner's vehicle traveling thirty-five miles per hour in an area where the speed limit was forty-five miles per hour and observed the vehicle cross the centerline of the roadway as it

---

[1]Petitioner was found not guilty of DUI after a jury trial in November of 2013.

traversed an S-curve. Further, Sergeant Parrish observed the vehicle make a wide radius right turn and completely cross the center line.[2] Sergeant Parrish activated his emergency lights and initiated the traffic stop in a gravel parking lot, during which he detected an odor of alcohol on petitioner's breath, observed that his eyes were red, and noted that his speech was slurred. Sergeant Parrish asked petitioner to recite the alphabet which petitioner did, but not in the proper sequence. Sergeant Parrish testified that he contacted Sergeant Ingraham, who was participating in a DUI patrol, to complete the investigation.

Respondent called Sergeant Ingraham to testify as to petitioner's performance of the field sobriety tests.[3] According to Sergeant Ingraham's testimony, upon meeting petitioner, he noticed a smell of alcohol on his breath, that his eyes were red and glassy, and that he swayed while standing. Also, Sergeant Ingraham testified that he noticed the gravel in the parking lot was larger than average and chose the flattest area that was most suited for testing. Sergeant Ingraham proceeded to explain and perform the field sobriety tests. First, he asked petitioner to recite the alphabet and petitioner did so correctly. Second, he performed the horizontal gaze nystagmus test, during which petitioner exhibited distinct and sustained nystagmus at maximum deviation in both eyes and a lack of smooth pursuit in both eyes. Additionally, petitioner swayed back and forth during this test. Sergeant Ingraham explained the walk-and-turn test and demonstrated the test for petitioner. Petitioner attempted the test and missed the demonstrated heel-to-toe steps and did not consistently walk a straight line. Finally, Sergeant Ingraham demonstrated the one-leg stand test and requested petitioner perform the test. Petitioner swayed while balancing on one leg and set his foot down twice during the test. In Sergeant Ingraham's opinion, petitioner failed all three tests. He testified that, following the administration of the field sobriety tests, he asked petitioner to submit to a preliminary breath test. However, petitioner refused to blow into the device. At that time, Sergeant Ingraham placed petitioner under arrest and transported him to the Vienna Police Department. During processing, petitioner complied with all directives.[4] The investigating officer testified that he read the implied consent form to petitioner; petitioner signed the form and was given a copy of it. Again, petitioner refused to provide a breath sample.

Also, petitioner testified that he was not intoxicated on the night of his arrest, but that he admitted to the officers that he consumed one beer with dinner. With regard to his driving, petitioner testified that he drove the road regularly and he swerved to avoid a pothole in the road, which caused his car to go left of center. Additionally, he believed that Sergeant Ingraham was

---

[2]This testimony is supported by video evidence that clearly shows petitioner made a wide right turn that caused his vehicle to be left of the center line.

[3]Video evidence of these tests was introduced below and provided for review on appeal. The video evidence supports the officers' testimony.

[4]Video evidence of petitioner's demeanor was introduced before the hearing examiner; however, the same evidence was not provided on appeal. Petitioner notes in his brief that the evidence was inadvertently omitted from the materials and that he made arrangements to furnish the video to the Court. However, there is no record the video was provided and, therefore, it was unavailable for our review.

the officer that stopped him, not Sergeant Parrish. Regarding the field sobriety tests, petitioner testified that the gravel in the parking lot inhibited his performance on the tests. Additionally, petitioner testified that he had multiple knee surgeries and was missing part of his left big toe.[5] He was unaware if these ailments affected his performance on the tests. Finally, petitioner testified that he refused to provide breath samples because he believed he passed the field sobriety tests. Respondent called Sergeant Parrish as a rebuttal witness and he testified that he was the officer that initiated the traffic stop of petitioner - not Sergeant Ingraham.

Following the presentation of all the evidence and testimony, the OAH issued its "Decision of Hearing Examiner and Final Order of Chief Hearing Examiner" ("final order") in October of 2016. The OAH found that sufficient evidence was presented to show that petitioner drove a motor vehicle in the State of West Virginia while intoxicated and, after being lawfully arrested, refused to submit to a designated secondary chemical test. Accordingly, the OAH affirmed the Commissioner's order revoking petitioner's driver's license.

In November of 2016, petitioner appealed the final order of the OAH to the circuit court. After reviewing the petition for appeal, the entire record, and the applicable legal authority, the circuit court affirmed the OAH's final order by in its July 20, 2017, order. Petitioner now appeals that order.

This Court has previously established the following standard of review:

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standard contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

Syl. Pt. 1, *Reed v. Conniff*, 236 W.Va. 300, 779 S.E.2d 568 (2015).

On appeal, petitioner argues that the hearing examiner's factual findings are contrary to the weight of the evidence. Specifically, petitioner asserts that the video evidence obtained from the officers' surveillance cameras of the field sobriety tests and petitioner's demeanor during processing clearly shows that he was not intoxicated. Petitioner argues that this evidence contradicts the investigating and assisting officers' testimony that he failed the field sobriety tests, slurred his speech, and made a wide right turn. Petitioner relies on syllabus point six of *Muscatell*, which provides that

> "[w]here there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court."

---

[5]Petitioner did not disclose these conditions to the investigating officer before or after the field sobriety tests.

*Muscatell*, 196 W.Va. at 590, 474 S.E.2d at 520, Syl. Pt. 6. Petitioner argues that the contradictory evidence was arbitrarily disregarded in this case and, therefore, the OAH's final decision is clearly wrong. We disagree.

The circuit court's affirmation of the OAH's final order must be affirmed because the underlying factual determinations are not clearly wrong. Petitioner's intoxication is a question of fact. The responding officers' testified that petitioner failed the field sobriety tests, and the video evidence supports that testimony. The video evidence showed petitioner: swaying back and forth while the investigating officer performed the nystagmus test; setting his lifted foot down twice during the one leg stand test; and clearly failing to walk a straight line after turning during the walk-and-turn test. Faced with this evidence of petitioner's performance, we cannot find that the hearing examiner's findings were clearly wrong.

Further, the hearing examiner correctly resolved all conflicting testimony in the final order. Specifically, the hearing examiner discussed petitioner's perceived success on the field sobriety tests and weighed it against the contradictory video evidence and petitioner's lack of experience and training with the tests. Further, the final order discounted petitioner's testimony after he failed to correctly recall certain facts, such as which officer initiated the traffic stop. "We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the [fact finder's] credibility determinations and inferences from the evidence. . . ." *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 306, 465 S.E.2d 399, 408 (1995). We find that the aforementioned final order resolved all factual conflicts through a reasoned and articulate decision. Accordingly, we find that petitioner is entitled to no relief.

Finally, the OAH predicated revocation of petitioner's driver's license, in part, on his refusal to submit to a secondary chemical test and the circuit court affirmed this finding. On appeal, petitioner does not challenge the finding that he refused to submit to a secondary chemical test. Pursuant to West Virginia Code § 17C-5-7, petitioner's license is subject to revocation due to his refusal to submit to this test.[6] This revocation is independent of petitioner's revocation for driving under the influence. See *Reed v. Hall*, 235 W.Va. 322, 773 S.E.2d 666 (2015) (holding that, although his license revocation for DUI was improper, Mr. Hall's refusal to submit to a secondary chemical test warranted license revocation.) Petitioner failed to challenge this finding and, as a result, effectively waived this issue. Accordingly, this holding is further affirmed.

For the foregoing reasons, the circuit court's July 20, 2017, order affirming the decision of the Office of Administrative Hearings revoking petitioner's driver's license is hereby affirmed.

---

[6]West Virginia Code § 17C-5-7 provides as follows:

[f]or the first refusal to submit to the designated secondary chemical test, the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state for a period of one year or forty-five days, with an additional one year of participation in the Motor Vehicle Alcohol Test and Lock Program. . . .

4

Affirmed.

**ISSUED:** June 15, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating